May it please the court, I'm Matt Adams with Northwest Immigrant Rights Project. On behalf of the petitioner, Mr. Atanda, I'm going to seek to preserve two minutes for rebuttal. The department entered one charge of deportability against Mr. Atanda, who is a lawful permanent resident. And that was that his offense qualified as an aggravated felony under 8 U.S.C. 1101-A43-R, a forgery conviction for which a sentence of at least one year has been imposed. But as even the immigration judge initially recognized, the record of conviction does not demonstrate that a sentence of one year had been imposed. What do we do with the fact that at the pleading stage of the case, the immigration judge asked your client to plead and your client said, yes, I was convicted of five counts of forgery and I admit that I got 32 months? So there's two points that I'd make about that. One, the immigration judge subsequently allowed him to revisit this issue and throughout the proceedings, on at least four different occasions, entertained his challenges to that charge of removability. And in fact, ultimately, in the order of the immigration judge on page 90 of the administrative record. But you have to do that, do you not, because of the various forms of relief that he was requesting? I mean, all that discussion ensued with regard to whether or not he was entitled to 212-H relief, withholding a removal, whatever that might be. I don't think that reflects the record. In fact, 212-H wasn't brought up until the very end of the proceedings. But more importantly, he initially, when he made that concession as a pro se detainee, he was standing in front of an immigration judge who first asked him the first charge, whether he had been admitted in Los Angeles in 1989 as a lawful permanent resident. And he said, yes, but, and then he started to explain it, because as a legal technical matter, he hadn't been admitted in Los Angeles in 1989. He had been admitted back as a student. And he started to try to explain that and the judge cut him off and said, let's just get to the facts here and you can, let's just answer these questions and you can deal with the facts later. But at the pleading stage, isn't that what you're, I mean, all we want to do is to try and figure out what's going to be at issue in a merits hearing if we get that far. And the first thing we need to establish is, do you challenge your removability? And the answer to the question was, I'm a felon who's been convicted and sentenced to 32 months. So he's not contesting that he is removable. Then the question becomes, and it looked to me in the record that the second immigration judge was the one who had to make those determinations. There are all these various different forms of relief that we now need to look at to see if he's entitled to relief. But that doesn't reopen the admission that he made at the pleading stage, as I read the case law. I think, first of all, I wouldn't concede that it was a clear concession. I mean, when he's asking. Let me ask you about that. Let's just start with what he said. I mean, it's sort of like, well, the government says that you were sentenced for 32 months for this offense. Is that right? He says that's correct, Your Honor. So it's unclear whether he's saying, well, it's correct, that's what the government says, or it's correct, I was sentenced for 32 months. Then my question is, in light of the standard of review and the ultimate conclusion that there was an admission, do we have to give deference to the BIA on that point? Because I think there is definitely some ambiguity here. I think this Court has repeatedly reaffirmed that it has the authority to revisit this issue despite a concession, especially when one has made a clear error of law or fact. I mean, this was the case in Mondo Jano Real. It was the case in Garcia Lopez. In both of those cases, individuals made clear concessions that were, on their face, incorrect. But what's incorrect? I mean, we know based on the other records that he did spend time in prison. The abstract of judgment, standing alone, is ambiguous because of the 654 stay. But that doesn't vitiate his consent. It doesn't render it unreliable. It's simply not conclusive alone. I think it does render it unreliable. He's conceding to a 32-month sentence where, if you look at the abstract of judgment, there was a two-year charge for the grand theft. There was no sentence imposed on any of the forgery counts. Thirty-two months was the aggravated theft, 24 months plus eight months for the DUI. It was 24 months for the theft and then another eight months for the DUI. And that's how you get to it. Exactly. So he never got, no matter how you cut it, he never got 32 months for the forgery or the theft. Exactly, no matter which way you look at it. It makes it unclear whether he actually was sentenced for it even, like sentenced and stayed or even sentenced. It's noteworthy that in the abstract, when it's talking about the concurrent charges for the false tax forms, that there they still place the concurrent sentence in parentheses. On every other count, they indicate the sentence except for the ones where they mark the boxes saying the sentence was stayed. But the sentencing transcript was not part of the record? No, that was not introduced. All we have is the abstract of judgment there. Is that something we could take judicial notice of as a proceeding before a court? I don't believe so. If you look at a case like Salvedra Figueroa recently, where this court refused to remand the proceedings back to the agency, there the court said there's no indication that DHS was subsequently able to come up with a document that was not initially available. And there's nothing in this light. In fact, at one point in the proceedings- We're limited to the administrative record, are we not? That's correct. And what I think is important about this, at one point the immigration judge even asked the trial attorney if they were going to, if either they had lodged an additional charge based on the grand theft offense or if they were going to, and the trial attorney declined. The government had the opportunity to supplement the record, to lodge additional charges. The regulation makes clear that they can lodge additional charges at any time in the proceedings, and they chose not to do so. And the other point, going back to- So they couldn't now. They couldn't now. He's no longer in proceedings. Proceedings have been concluded, and we have the record before us. Can I ask you as a practical matter, on this point, let's just say for talking purposes we agreed with you, and then we'd have to look at the other issues raised. But it seemed that the government, and we'll clarify with its attorney, that they didn't use the grand theft as a basis for removability, but they did use it as a basis for waiver on withholding. Is that correct? It's ambiguous, but that's how I read it. So if that's true, and if the grand theft could be used in that capacity, then is that the end of the case for your client? No. Even if the court had found that he were deportable, if the government had followed the statute and entered a charge against him for which he was deportable, and then they said, okay, well, we lose on forgery, but here on grand theft we win, they lodge that additional charge, he still would have been eligible for 212H relief. And that is because he was an individual who had never been admitted as a lawful permanent resident. He was admitted as a nonimmigrant on a student visa, and then subsequently from within the United States adjusted his status to that of a lawful permanent resident. He's like some? That's correct. As this court made clear in Hing Sum, the statute breaks down to two components. You have to be admitted, but you also have to be admitted in the status of someone who's been admitted for a lawful permanent residence. And so even though, as Hing Sum said, it might appear redundant, those are actually two components because both of those parts are defined under the statute. And so his admission, which is the new definition, which replaced the definition for entry, saying what was his status when he came to the U.S.? He came in as an F-1 student visa. And because of that, and this court again cited approvingly to the Fifth Circuit's analysis in Martinez v. McCasey, which is squarely with this one, an individual who had been denied the opportunity to apply for 212H relief. And both the Fifth Circuit and this circuit found that plain language is controlling. And subsequent to that, this year the Eleventh Circuit has ruled likewise in Lanier. So even if the government had lodged an additional charge, he still should have had that opportunity to at least apply for this waiver, and then he would have had to show his equities, and that would have been countered by his criminal conduct, and the judge would have ultimately exercised her discretion to determine whether he qualified. But I'd also like to go back. So let me just, to be clear, if the grand theft qualifies as the appropriate crime, then he would still be in a position of having to prove his equities, and he'd be back with his record, including all of these felonies, correct? That's correct. The judge would be able to look at all of his crimes, including the DUI and the tax forms. And so he would have to say, yes, I'm inadmissible for these reasons, but given the fact that I've lived here for 30 years and I have my children and I've shown that I'm rehabilitated, I deserve this one last chance. And so that's the other form, the form of relief that he was denied. It's 212H, right? 212H. If we were to conclude that he, we were to deny the petition on the grounds of removability and find that it was an admission that he admitted that he served more than a year, could we still deal with the 212H? Absolutely. This court retains jurisdiction to review all of the legal issues that go to the order of removal. He wouldn't have been ordered removed absent first a finding whether he qualified for that relief. So this court has authority to review any denial of an application for relief as long as the denial is not on a discretionary basis. And here it was, and he was denied as a legal matter because the agency found that he did not qualify. But I'd like to go back to the point about whether he made this concession. And initially he went before Judge Young, and we have that colloquy that we talked about. And then subsequent to that he filed a motion to terminate, and Judge Young was the same initial judge was the one who ruled on his motion to terminate. And she denied it not based on a concession but based on her review of the record. And, again, when he was back in front of the second judge, Judge Beamer, the judge at the end of the proceeding said, I take it that you're renewing your motion to terminate. And in her order, again, she denied him, found him deportable not based on a concession but based on the judgment, and that's explicit on page 90 of the administrative record in her order. And then she went through and reviewed it and said, despite the ambiguity, he was apparently sentenced to 32 months, which, as we've explained, simply cannot be documented. But why can't she rely on his admission in reading the record that way? I mean, she doesn't have to specifically reference that it's in the record, is it not? What is in the record? That he made that admission. I mean, the fact that she looked at the rest of the record doesn't undercut the fact that he made the admission. Well, I think, in fact, that she references that he initially conceded to the charges in her order, and that makes all the more clear that she wasn't relying on that concession, but she said rather based on the judgment she's making these findings. And then, again, what we're dealing with- of the pleading admission was to sort of focus the immigration judge on what really needs to be fleshed out during the merits hearing. Why in her prior order can't she rely on that admission in whatever else she does that she has to spend time? I think at times that's certainly how the pleading serves. When I go before the judge and say, yes, we conceded to this, and we're ready to move on to the forms of relief, and it's clear-cut how that proceeding is working. But in this case, and as the court noted in Perez-Mejia in its new footnote, oftentimes there's not clean pleadings and evidentiary stage, but it's all mixed together. And just like this case, on four different occasions the court entertained his challenges. On the motion to terminate, later the bond hearing, he made the same argument, and then he requested that that argument be included in the proceeding, which the judge accepted. Then the judge found that he was renewing his motion to terminate, and then they had this involved discourse between the judge, the trial attorney, and Mr. Otonda at the individual hearing, one more time going over whether this qualified as an aggravated felony. But what in that record plainly contradicts his admission that he was so convicted and so sentenced? What we argue plainly contradicts that is the fact that there was no sentence imposed on any of the five counts of forgery as contrasted with all the other counts. But that doesn't contradict his admission. If you're referring to the abstract of judgment, it doesn't definitively answer the question, but it doesn't contradict it. As I understand the purpose of the 654 stay, it is essentially a recognition of the California merger doctrine, that if you're convicted of multiple counts of conviction, you're basically going to serve one sentence for the most serious count, but that the other counts are simply stayed unless you're ordered to serve consecutive counts. But the immigration statute is explicit that it's the sentence imposed. In this case, there is no sentence that was imposed. I think it's important to emphasize. Reflected on the abstract of judgment, I agree with you, but that doesn't contradict his admission that he actually was sentenced to 32 months in custody. I think it does. But more importantly, it was the department that had the burden of showing with clear and convincing evidence that he was deportable as charged. And so if that's what they submitted was the abstract, and they had nothing more to uphold their burden, then that's where the problem is. And that goes back to this court's case. I think that you guys can argue until the cows come home. I don't believe there's going to be a meeting of the minds right now on that point. Why don't we hear from the government, and you'll have a minute for rebuttal. Thank you. May it please the Court. Dan Shen on behalf of the United States Government. This is a case in which the petitioner pled guilty to stealing over half a million dollars from the hospital that he worked at over a six-year period of time by forging over 120 checks in the names of his supervisors. That's not disputed. For that, he was sentenced to a two-year term of imprisonment for grand theft, five years sentence enhancement because the amount that was stolen exceeded half a million dollars, and then he was also sentenced to eight months for a DUI. And it says in the judgment of conviction that his five forgery convictions, the sentence was stayed, but as Judge Palmer noted, that doesn't end the question. So if you look at the abstract judgment, we don't know what the sentence, whether there was a sentence actually imposed, we don't know what was stayed, correct? Correct. Okay. So then where do you have to go? Your Honor, this Court has developed an interest in jurisprudence on the doctrine of concession and immigration pleadings, and the opposing counsel is correct that if the concession of fact is clearly erroneous, this Court has found that a clearly erroneous concession of fact would not be binding, but not if the concession of fact is silent from the record. So in Perez Mejia and the ---- Well, but here the concession was, you could look at it two ways. He's either conceding that that's the position of the government, as perhaps was pointed out by Judge McKeown, or he's conceding that he got 32 months. For the forgery. For the forgery. But what the judge says is the government says you got 32 months for the forgery. Is that correct? And a person could be, a non-lawyer could be thinking, well, yeah, that's what the government said. Yes, that's correct. The government said that.  Correct, Your Honor. If it's the former, it's not inconsistent with what the government's position is that he got 32 months. If it's the latter, then it is inconsistent because he didn't, no matter what, he didn't get 32 months for the forgery. He got, at best, one could think that maybe he got 24 months, but we're guessing, because the 32 months comes from the theft charge plus the DUI. That actually, I'm not sure it's clear from the record because ---- Well, isn't it clear from the judgment that that's how you get 32 months? That's one way to get the 32 months. How else could you possibly get the 32 months? Well, according to his test, so in the hearing itself, there are three times that he talks about. So there's the bond hearings and ---- Well, if he'd gotten 32 months for the forgery, it would be the grand theft conviction that was stayed, not the forgery, because you sentenced on the greater offense. So he couldn't possibly, under 654, have gotten 32 months on the forgery. Do you see what I'm saying? I see. Because if he got 32 months on the forgery, then the grand theft conviction would have been stayed, not the forgery, because you sentenced on the higher conviction. Right. So he either got 24 months or less on the forgeries. Correct. So the statement about getting 32 months for the forgery is objectively incorrect. There's no way that that could possibly be correct. Unless you add them, but ---- Well, you can't add them, because then they go on later in the record, and it says, well, I'm looking at the judgment. It says two years for grand theft, the immigration judge says. Well, it's seven years for grand theft. No. I'm reading what ---- I'm sorry. It's from the judgment of conviction. I'm saying what the immigration judge is saying. I'm looking at the judgment. It says two years for grand theft. And then for the counts, well, instead of it looks like it's stayed, since the judge didn't want you to have to spend two years on each count. Presumably they're speaking to forgery. So then say, well, how much time did you actually spend? And then it's just repeated again. I was asked to serve 32 months. So now the judge is coming back and saying, well, it looks like it's two years for the grand theft. Right. So the judge doesn't seem to be making any finding or conclusion on the forgery in the colloquy. And then they go on and talk about the income tax problem. Right. And he goes on to say, and this is where the jurisprudence in this court gets kind of murky on concessions because this is actually during a pleading state. But then there's two IJs in this case. There are two hearings. And it seems like the IJ, the second IJ was trying to reestablish what the first IJ found. And if you turn to 138 in the record, well, starting from 137, the new IJ says, well, anyway, I'll find it later. I'm looking at the judgment. It says two years. It goes on. How much time do you actually spend, Your Honor, because the circumstances around my case, oh, that's to serve 32 months, 32, 32. Impact program in the state of California called fire camp. Now, the government doesn't know what this program is, but it seems more than just an erroneous concession that, I don't know. Yeah, sure, Your Honors. But, you see, the thing is that there's how much time were you sentenced for because that's what we're really looking for. And obviously, you know, we're all kind of like archaeologists going through this record at this point, you know. And so we got the judgment. We got these phrases out here. But it's like it's swimming around because nobody actually asked the question we're trying to ask each other, which is how much time was he sentenced for on the forgery, and then, you know, did it get suspended or stayed? So the 32 months on the second IJ, which is what I was reading from too, I think it's AR 137, 138. Basically, how much time did you spend? Well, I was asked to serve this much, but at that point, it's not connected to whether it's forgery, DWI. You see what I'm saying? It's this murkiness. So it just seems to me that if you go to the government's burden, what does the government point to besides the abstract, which the IJ found ambiguous, to meet its clear and convincing as to the fact that he was actually sentenced? I mean, in our head, we probably, you know what? He probably was, but who knows? So what should we look at in addition to the abstract? Yara, as we pointed out in the government's brief, that his concession should be relied upon. And as the court presumes, once it's admitted during the pleading stage, it's no longer an evidence. It's a judicial admission of fact. Correct. And so the clear and convincing is? This is what we've been talking about. Now, when he's talking about, well, I was asked to serve 32 months, that's not linked to forgery sentence. So then we're kind of back to the issue that we discussed with Mr. Adams, and that's whether the statement he made, that's correct, Your Honor, whether that means that's correct, I got sentenced to 32 months for forgery, or that's correct, that's what the government is saying. Could you just comment on that, please? Yes, Your Honor. Whether he understood – it seems clear that he understood the question. This is an educated man. He was a comptroller for a hospital. So we're not dealing with a situation in which it's an alien who doesn't quite grasp the English language or doesn't understand what's being asked of him. This is a pleading stage. If you read the entire transcript, this is a pleading stage. How do you plead to the factual allegations made against you? Now, I suppose from the record you can read it and say – Well, that's not the question asked. He didn't say, did you serve 32 months for forgery? He said, is it true that the government says you served 32 months for forgery? I mean, it's – can't you admit that it's at least ambiguous? Sure, Your Honor. And I think during these immigration proceedings, these things happen so quickly that they're not going to always phrase the question perfectly in a perfect manner. But I do believe that given the context, this is a pleading stage, it was followed by a question. It just seems incongruous for one to read that and say, you were convicted of five counts and the government said you're sentenced to 32 months, and somehow you read that as a dispute. Like, yeah, they said it, but I don't mean that. Right, but you can't really read that without understanding that he was sentenced for the grand theft and the DUI also. And so in a way it just doesn't make any sense. I don't know where the 32 comes from other than the other two crimes. Isn't the rule, quoting from Perez-Mejia, that if at the 1240.10c pleading stage an alien individually or through counsel makes admissions of fact or concedes removability, and I emphasize, and the IJ accepts them, no further evidence concerning the issue of fact admitted or law conceded is necessary. So here, can we say that the IJ overall, I know there were two IJs, but ultimately the second IJ didn't seem to accept it because she was back in the soup trying to figure it out, and she concluded that he got 24 months, not 32 months. She says, it looks like they gave you, this is 137 to 138, but I'm looking at the judgment and it says two years for the grand theft and then for the other counts instead. It looks like it stayed since the judge didn't want you to have to spend two years on each count. How much time did you actually spend? And then it says, because of the circumstances, I was asked to serve 32 months. And then she says, okay, it looks like they gave you three years to spend for the income tax charges and eight months for the DUI. So it looks like she revisited it, even though she wasn't the first one. Right, and I think this is just to establish what was originally said, but there was no evidence taken on it. There was no arguments made by the government on this particular issue. It just seemed it had been kind of a, because it's a switching of IJs. Which brings me to two sort of questions. First, what if we were to say that given the record before the immigration judge, it doesn't constitute an admission and the only evidence, the judgment of, the abstract of the judgment of conviction is insufficient to show that he served, he was sentenced to at least a year. So what's the result? Could we send it back or does he just escape deportability? It's the government's position that if the court doesn't find a concession to be binding, that the proper recourse would be to remand it back. There are things that the board, I think because of the, it seems like there was not much, if you read the transcript, it's a very skim, it's a very slim record. And the BIA seems to assume that he has not contested the factual allegations against him. And for the BIA to go back and look at this and say. Well, do they get another chance to do that? Or is it remanded then to say that he then goes through the various other paths? Right, and we think that would be. It's not automatic. I mean, if we were to say, well, this is so ambiguous that the government hasn't met, but it's clear and convincing. Burden, that's not a stay in the United States free card, correct? Right. So then he needs to walk or jump through the other hoops. Would we, in your view, need to decide the other issues or would it then just go back so that the impact of the grand theft could be determined on his other forms of relief? We think the latter. And that's why we filed the remand motion back in March. And the reason why the motion was opposed was the fact remains that this was all one big scheme for him. And for whatever reason, INS decided, and this is almost a 10-year-old case by this point. For whatever reason, INS didn't charge grand theft. When it went to the hearing, because of, at best, if you say it's ambiguous, fine, but they relied on it. And so they didn't go ahead and file large charges. Maybe the government was at fault for not relying on that. Maybe he was at fault for hearing the questions wrong. Whatever the case, there was a concession of one year relied upon. Could I stop there just to understand the procedure? So you filed a motion to remand. And the basis for that would be what? For the board to reconsider, one, the evidence for the one-year term of conviction. Because it seems clear that the board understood there had been a factual concession. I understand. And two, to also determine whether or not his conviction was categorically or in a modified category. Because that also matters for the concession analysis under this Court's jurisprudence for concessions. If it's under a modified categorical approach, well, then you can't look at a concession. But if it's under a categorical approach, you may. And it's not clear from the board's decision which one they used. Well, so if we were to conclude that this is not a binding admission, if we conclude that it's a binding admission, that part of the case is over, right? Correct. If we conclude that it's ambiguous, it's not a, for whatever reason, it's not a binding admission under the Perez, I think it's Perez Mejia, how do we send it back? I mean, what's the analysis that can result in it being sent back other than us concluding the government didn't prove by clear and convincing evidence, so therefore the petition granted. He can't be removed. The court, well, the INS V. Ventura, the BI never addressed in the first instance any of these issues because they understood it had been conceded. And as the Court has noted … They couldn't grant him the petition, so he couldn't be removed. He would still need to go through the other procedures, correct? Correct. This just establishes that, well, would this take away, if it took away the basis for his removability, would his case be over? If the concession was found not to be binding at this stage of the proceeding, unless DHS went ahead and recharged him with … Okay, that was my question. Can they give him, like, an amended MTA with grand theft, or what would be the process? Well, we want it to be remanded because we believe that if it goes back to the BIA, then the BIA can look at this and say, well, we can send it back to the Immigration Court for additional findings to be lodged against it. Because it's clear that grand theft under 101-843-G, a theft offense sentence of more than one year or … Yeah, I don't think that's the big issue. Right, so I think if the Court granted this petition for review without a remand, I think the hope, and I'm just speculating here, is that the case will just kind of get lost in the system because we're not going to contact DHS on our own, I think it's ex parte communication, to refile against this alien. So the DHS will have to do it themselves. And I think we charge very few criminal aliens. We just don't have the resources to do it. And so it would be a lot harder to make its way through the system, again, for a case that's over 10 years old, if the petition for review were granted. But since you elected, since the government elected not to charge him with removability based upon the grand theft, can they add that now? Counsel for the petitioner was saying no since the proceeding is over. The Board of Immigration Appeals cannot, but the Board of Immigration Appeals can still remand. It was never charged, so I don't know why it wouldn't be able to. If the Board of Immigration remanded it back to the Immigration Court for additional proceedings, I don't see why DHS couldn't then bring the grand theft law to trial. But I guess that's really not for us to figure out. Right. It's just sort of interesting. But what's the basis to remand this other than just calling it the government proved or didn't prove by clear and convincing evidence is removability? And why should we remand it? Well, I don't think the court will see many cases that are this ambiguous in terms of the record that are also this old. This case was dismissed in 07 for failure to prosecute. And it was only reopened in 2010. So this case, in between there's been a board, there's been a, this is a very convoluted case. And so I think the basis would be that there was some form of, there was a concession that was apparently possibly ambiguous. Do you have any authority for that? I mean, that's sort of like it's saying, well, you won, but we get to try again. I mean, I appreciate your position.  What you're saying is it's unfair for the immigration authorities to be bound by. . . His own faulty concession. Right. So he committed these crimes against the hospital. It was over a six-year period of time. Stole half a million dollars. And because he himself misunderstood or possibly, I don't even know if he, I don't think he misunderstood. But let's assume he misunderstood the question. That erroneous concession was, there was no more evidence taken on it. If he was vigorously disputing this 32 months throughout his proceedings, did INS just file lodge charges in the grand theft? That's clear. The lodge, you know, the only reason why nothing was done, or I'm speculating, but one reason why nothing was done was because the forgery convictions were deemed to be good because of his concessions. That's what the board. Then why did the immigration judge revisit it back on, what was it, September 13th? The section we were talking about, 137 to 138 of the administrative record, why did they revisit it, September 13th, 2006 hearing? I think it was because the new immigration judge and just wanted to confirm what the original immigration judge found. But she found something different. She didn't find 32 months. She found 24 months for the, she didn't find anything for the forgery, actually. She found 24 months for the grand theft and eight months for the DUI. Well, I don't think that, again, it's a mystery. Are there any other questions? One other question. Assuming you win on the removability issue, what about the 212H argument? Can we still deal with that, or are we somehow barred from dealing with that? Our position is that he failed to exhaust his administrative evidence by not briefing the issue to the board. Now, I understand that the petitioner argues that the board actually goes ahead and mentions it. Right. But there's no discussion of it. Well, put aside exhaustion of remedies. I mean, if you're right about that, that's an easy answer. But what if we think that he did exhaust it? Could we still deal with it, or are we lack jurisdiction to deal with it? So assuming that we're right on the concession issue, I think the court can also remand back. On the 212H? On the 212H. Okay. Thank you. You have a minute for rebuttal. This is a day for confusing cases. Thank you. I'll just say administrative record, page 71, is briefed to the DIA. In the second to the last paragraph, it says, the denial of consideration and relief by the IJ for 212H violates my equal protection. So he's explicitly raised it to the IJ as well. He raised it again. On page 13, the administrative record is briefed citing the case that was raised, and the DIA reached that issue. So if this case were remanded to the DIA, I believe this court should reach, because the board has already reached that, and that would continue to be a bar that would be applicable. But I would say that the government cites to Ventura, Ventura is inapplicable. Just like in Fernando's release where they talked about, in Ventura, the court reached the one issue that the board had reached, and then went on to reach another issue in determining eligibility for asylum, saying, well, now we can go to the next step and see if they qualify. Yep, he qualifies. Here's his grant of asylum. This is completely inapplicable. All the issues that are before this court were before the agency. And so it falls in the line of cases like Fernando's release, Ruiz Vidal, and Saavedra Figueroa, where there's no reason to give the government a second bite at the apple. So that was why you opposed the remand in part? In part, but also because the 212H was an integral part of the proceeding. And so if it gets remanded without any instructions on 212H, we're just going to end up back here, you know, next year. And so a proceeding that is dragged on for 10 years is going to be dragging on for 12 years. Thank you. Thank you. Thank both counsel for your argument, very well argued and briefed, but complicated in the case of Atanda versus Holder. So we'll take a short break. And the counsel in the next case, Martin versus Quinn, if you could come up and get organized, and we'll come back shortly.
judges: Moskowitz, McKeown, Tallman